UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| ALLIED WORLD SURPLUS LINES | ) | |
|---|---|---|
| INSURANCE COMPANY, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:17CV1185JCH |
| | ) | |
| GALEN INSURANCE COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the Motion to Stay filed by Defendant Galen Insurance Company and Defendant Galen Insurance Management Company. (ECF 18). The Motion has been fully briefed and is ready for disposition.

## BACKGROUND

In the Complaint, filed on March 29, 2017, Plaintiff Allied World Surplus Lines Insurance Company f/k/a Darwin Select Insurance Company (Allied World) seeks declaratory judgment, pursuant to the Federal Declaratory Judgement Act, 28 U. S. C. § 2201, regarding coverage under Private Risk-Transfer Organizations Management and Professional Liability Insurance Policies (the Policies) issued to Defendant Galen Insurance Company (GIC) and Defendant Galen Insurance Management Company, Inc. (GIMC, and, jointly with GIC, the Galen Defendants). (ECF 1 (Complaint)). The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. (ECF 1, ¶ 8; ECF 10 (Answer), ¶ 8).

One of the Policies at issue in this matter is for the period of April 26, 2014, to April 26, 2015 (the 2014-2015 Policy). (ECF 1.4). The second policy at issue is for the period of April

26, 2015, to April 26, 2016 (the 2015-2016 Policy). (ECF 1.6). Allied World also issued a renewal policy for the period of April 26, 2016, to April 26, 2017 (the 2016-2017 Policy). (ECF 1.8). The 2014-2015 Policy provides for limits of liability of $1,000,000 each for Management Liability, Professional Liability, and Employment Practices Liability for all loss from all claims under the insuring agreement. The 2015-2016 Policy and the 2016-2017 Policy provide for a limit of $2,000,000 each for Management Liability, Professional Liability, and Employment Practices Liability. All three Policies provide for a limit of $25,000 for Network Security Liability.

On June 14, 2014, Howard Nathans filed a Complaint against the Galen Defendants for wrongful termination of employment and breach of contract (the Nathans Claim). Subsequently, on April 4, 2016, Defendant Dennis Lowry, the former Chief Financial Officer of GIC, filed a Complaint, in Circuit Court of St. Louis County, Missouri, against the Galen Defendants for wrongful termination of his employment (the Lowry Claim). (ECF 1.3). The Galen Defendants requested coverage for the Nathans Claim under the 2014-2015 Policy and requested coverage for the Lowry Claim under the 2015-2016 Policy. Allied World initially agreed to defend the Galen Defendants against the Lowry Claim under the 2015-2016 Policy under a complete reservation of rights. Subsequently, Allied World advised the Galen Defendants that it would continue to defend them against the Lowry claim, but that it would do so pursuant to a complete reservation of rights under the 2014-2015 Policy, rather than the 2015-2016 Policy, because, pursuant to the provisions of those Policies, the Lowry Claim and the Nathans Claim are considered a single claim first made during the 2014-2015 Policy period. (ECF 1, ¶¶ 28-31; ECF 10, ¶¶ 28-31).

The alleged basis for Allied World's assertion that the Lowry Claim and the Nathans

2

Claim are a single claim is that they are "based on, aris[e] out of, directly or indirectly result[] from, in consequence of or in any way involv[e] the same or related facts, circumstances, situations, transactions or events or the same related series of facts, circumstances, situations, transactions or events, whether related logically, causally or in any other way," as provided by the 2014-2015 Policy and the 2015-2016 Policy. (ECF 1, ¶25).

In its claim for Declaratory Relief before this Court, Allied World seeks a declaration that the Lowry Claim is either covered by the 2014-2015 Policy or that it is not covered at all due to misrepresentations in the applications for coverage under the 2015-2016 Policy and the 2016-2017 Policy. Allied World also seeks rescission of the 2015-2016 Policy and the 2016-2017 Policy, and, if the Court determines there is no coverage, seeks reimbursement of all amounts paid for the Lowry Claim. (ECF 1, ¶¶ 50, 54, 59, 63, 67).

The Galen Defendants have counterclaimed, seeking a declaration that the Lowry Claim is covered under the 2015-2016 Policy and that Allied World is obligated to indemnify the Galen Defendants and to reimburse them for their defense costs in connection with the Lowry Claim. (ECF 10 at 9-16.).

On about May 31, 2017, the Circuit Court of Cole County, Missouri, entered a Judgment, Decree and Final Order of Liquidation, placing GIC in liquidation. The Liquidation Order states: "No action at law or equity or in arbitration shall be brought against [GIC] or the Liquidator, whether in this state or elsewhere, nor shall any such existing actions be maintained or further presented after issuance of this Order." (ECF 18 (Motion to Stay), ¶¶ 2-3; ECF 30 (Memorandum in Opposition to Defendants/Counterclaim Plaintiffs' Motion to Stay) at 7 (citing Liquidation Order ¶ 29)). The parties agree that Liquidation Order applies only to GIC. (ECF 18, ¶¶ 2-3; ECF 30 at 7).

## LEGAL FRAMEWORK

As a preliminary matter, the doctrine of discretionary abstention provides that "abstention from the exercise of federal jurisdiction is the *exception, not the rule*." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976) (emphasis added). Abstention "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Id.* at 813. *See also New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans (NOPS)*, 491 U.S. 350, 359 (1989).

Federal courts have articulated several abstention doctrines, including the *Burford* Doctrine, *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), and the *Colorado* River Doctrine, *Colorado River*, 424 U.S. 800. In *Wolfson v. Mutual Benefit Life Insurance Company*, 51 F.3d 141 (8th Cir. 1995) (called into question on other grounds), the Eighth Circuit reversed the district court's order to stay a federal action to recover life insurance benefits and held:

> [T]he abstention doctrine [was] first enunciated in *Burford* . . . . As the doctrine is now articulated, *Burford* abstention is appropriate in two extraordinary situations, when "there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar," or when "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern," when "there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar," or when "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*Wolfson*, 51 F.3d at 144 (quoting *Colorado River*, 424 U.S. at 814).

In the context of pending state court insurer insolvency proceedings, courts have "upheld abstention under the second prong of the *Burford* Doctrine, which acknowledges that important state policies are furthered if litigation involving an insolvent insurer is consolidated in the state forum where the insurer's insolvency proceeding is being conducted." *Wolfson*, 51 F.3d at 144.

4

*Wolfson* further holds that there are "at least three major categories of cases" of "insurer insolvency abstention." *Id.* at 145. The Eighth Circuit described these categories as follows:

> The first category consists of suits by the insolvent insurer's policyholders or policy beneficiaries against third parties in which the defendant, often supported by the insurer's receiver, urges abstention because recovery by the plaintiff may reduce the receiver's ability to recover on behalf of the insurer's insolvency estate. Not surprisingly, abstention is usually (but not always) denied in such cases, particularly where a federal statutory claim is being asserted. The basic reason not to abstain in most such cases is that the state court insolvency proceeding, unlike the federal court, cannot afford plaintiff a remedy against a third party.
>
> The second category consists of cases in which the insolvent insurer or its receiver has asserted a claim in the federal action which, if successful, will enhance the insolvent's estate. … The abstention issue often turns on the relative importance to the state court insolvency proceeding of litigating a particular claim in that proceeding. That can vary greatly, and therefore the abstention rulings in these cases quite properly defy generalization.
>
> [The] third broad category, [consists of] claims by policyholders, policy beneficiaries, and other creditors against a now-insolvent insurer. The first issue in considering abstention in this situation is whether the state court insolvency proceeding provides a mandatory special procedure to adjudicate claims against the insolvent and then distribute the insolvent's inadequate assets among the various classes of successful claimants. If there is such a concurrent state court procedure purporting to bind the federal court plaintiff, that brings into play what is generally referred to as the *Colorado River* abstention doctrine, which turns on "considerations of wise judicial administration . . . conservation of judicial resources and comprehensive disposition of litigation" that are relevant whenever federal and state courts are contemporaneously asked to exercise jurisdiction over the same dispute.

*Wolfson*, 51 F.3d at 145 (internal citations omitted).

## DISCUSSION

The Galen Defendants argue the *Burford* Doctrine is applicable in this matter and that the third category of insurer insolvency abstention, as described in *Wolfson*, is present in this matter. (ECF 19 at 5). In support of this position, the Galen Defendants further contend that: the Judgment, Decree and Final Order of Liquidation and Missouri law enjoin the bringing and continued maintenance of suit against GIC; the Missouri Insurers Supervision, Rehabilitation and

5

Liquidation Act, V.A.M.S. §§ 375.1150-375.1246, constitutes a "comprehensive and exclusive scheme for the resolution of claims against insurers"; and the "[p]rinciples of comity, federalism, and judicial economy, and the principles undergirding the McCarran-Ferguson Act"[1] support the staying of this matter to facilitate the resolution of Plaintiff's claims "in accordance with Missouri's comprehensive scheme." (ECF 18, ¶¶ 4-5). The Galen Defendants also contend that litigation of this matter "would interfere with Missouri's comprehensive scheme governing the liquidation of insolvent insurers and result in inefficient parallel proceedings," and that, therefore, this court should "abstain and order the case stayed." (ECF 32 at 1).

In opposition to the Motion to Stay, Allied World argues that: this Court is bound to exercise its jurisdiction except in rare and exceptional cases; authority of federal law supports a finding that the Motion to Stay should be denied; resolution of this case would not interfere with the State court liquidation proceedings nor adversely affect GIC's creditors; given that neither GIMC nor Defendant Lowry are subject to the liquidation proceedings, granting the Motion to Stay would result in piecemeal litigation because Allied World would be required to litigate its claims against these parties in a separate proceeding; and denying the Motion to Stay is in the interest of judicial economy and efficiency. (ECF 30 at 5-6).

In response to Allied World's arguing that the State court does not have authority to enjoin federal court proceedings, the Galen Defendants state that they do not contend "that subject matter is lacking," nor do they contend that "state courts have the power to enjoin federal courts." They argue, rather, that the Court should "abstain from adjudicating this matter and stay it in deference to Missouri's comprehensive insurer liquidation scheme." (ECF 32 at 1-2).

---

[1] The McCarran-Ferguson Act, 15 U.S.C. § 1011, et seq., exempts the business of insurance from antitrust laws and was enacted to insure that states retain the primary role in regulating insurance. It "vests states with the authority to regulate insurance." *Midwest Emp'rs Cas. Co. v. Legion Ins. Co.*, 2007 WL 3352339, at *5-6 (E.D. Mo. Nov. 7, 2007) (unreported).

As stated above, the Galen Defendants contend that this matter fits into the third category of "insurer insolvency cases," as described by *Wolfson*. (Doc. 19 at 5). Although the Galen Defendants state that they "have not asked the Court to abstain under the *Colorado River* doctrine" (ECF 37 at 1), they extensively cite *Wolfson*, which case holds that factors enumerated in *Colorado River*, 434 U.S. 800, come into play when determining if abstention is appropriate in the third category of insolvent insurer cases. *Wolfson*, 51 F.3d at 145. In any case, this Court is bound by *Colorado River*, to the extent it is applicable. *Bosse v. Oklahoma*, 137 S.Ct. 1, 2 (2016) (per curiam) ("Our decisions remain binding precedent until we see fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality.") (citation omitted). The Court finds that this matter does not fit squarely into the third category of insolvent insurer case. Given that an abstention inquiry is fact specific, the Court will consider factors relevant to whether this matter should be stayed, regardless of whether they fall within the ambit of a *Wolfson* "third category" inquiry. *Wolfson*, 51 F.3d at 145-46 ("Abstention is inherently a fact-specific inquiry. . . . '[T]he various types of abstention are not rigid pigeonholes into which federal courts must try to fit cases.' … [C]ourts should not limit the abstention inquiry to whether the case at bar fits neatly into the most analogous line of prior cases.") (quoting *NOPS*, 491 U.S. at 359). As such, to the extent they are relevant to the facts of this case, the Court will "tak[e] both *Burford* and *Colorado River* principles into account" upon determining whether this matter should be stayed. *Wolfson*, 51 F.3d at 146.

Factors to be considered when determining whether *Colorado River* abstention is appropriate include:

> "'inconvenience of the federal forum; the desirability of avoiding piecemeal litigation, and the order in which jurisdiction was obtained by the concurrent forums. *No one factor is necessarily determinative*; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the

7

combination of factors counseling against that exercise is required. *Only the clearest of justifications will warrant dismissal."*

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15-16 (1983) (quoting *Colorado River*, 424 U.S. at 818) (emphasis in original).

"As a threshold matter, . . . there must be pending parallel state and federal court proceedings before *Colorado River* is implicated." *Fru-Con Constr. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 535 (8th Cir. 2009) (citations omitted). For state and federal proceedings to be considered parallel, the Eighth Circuit holds that, "[t]he pendency of a state claim based on the same general facts or subject matter as a federal claim and involving the same parties is not alone sufficient." *Id.* There must be "a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court," and "jurisdiction must be exercised if there is any doubt as to the parallel nature of the state and federal proceedings." *Id.*

Also, pursuant to the *Colorado River* Doctrine, "the mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction." *Colorado River*, 424 U.S. at 816. A balancing test is applicable when a federal court is determining whether abstention is appropriate due to "parallel state-court litigation"; the applicable balancing test weighs heavily in favor of the exercise of jurisdiction. "The weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case." *Moses H. Cone*, 460 U.S. at 16 (citing *Colorado River*, 424 U.S. at 819). Considering the facts of this case, including that the resolution of the State liquidation proceedings will not resolve the coverage issues presented in the federal Complaint, as discussed above, the Court finds that the State liquidation proceedings and the federal case are not parallel within the meaning of the *Colorado River* Doctrine. *Fru-Con. Constr.*, 574 F.3d at 535. To the extent it can be argued that they are parallel, "nothing about the dispute between the parties

8

"evinces a special or important rationale or legislative preference for resolving these issues in a single proceeding." *Seneca Ins. Co. v. Strange Land, Inc.*, 862 F.3d 835, 843 (9th Cir. 2017).

Additionally, the contractual issues raised in Allied World's Complaint are not pivotal to the State liquidation action. Proceeding with the federal case will not necessarily interfere with the general purposes of, or the State's interest in, the liquidation proceedings or the State's control over GIC; no assets of GIC "will be compromised"; "no creditor will have an unfair advantage"; and there "is no indication that litigating the contract dispute [between the parties] in federal court will interfere with the receiver's control of [GIC] or frustrate the [S]tate's interest in the insolvency proceedings." *Midwest Emp'rs Cas. Co. v. Legion Ins. Co.*, 2007 WL 3352339, at *5-6 (E.D. Mo. Nov. 7, 2007) (unreported) (a contractual dispute involving insolvent insurer did not impair the state's regulatory scheme involving insolvent insurers).

Further, the issues presented by Allied World in its Complaint - including whether the Lowry Claim and the Nathans Claim are a single claim, and whether the Galen Defendants made misrepresentations in the applications for coverage - will not be resolved in the State liquidation proceedings; the State liquidation proceedings will not determine whether Allied World is entitled to the relief it seeks in federal court. *Federated Rural Elec. Ins. Corp. v. Arkansas Elec. Coops., Inc.,* 48 F.3d 294, 298 (8th Cir. 1995) (the policy against avoiding piecemeal litigation weighed heavily against abstention where the state action could only resolve some issues).

Although the Galen Defendants argue that the facts of this case are analogous to *Wolfson*, where abstention was proper, *Wolfson* is distinguishable because, in *Wolfson*, the insolvency proceedings would resolve the issue before the federal court; in both state and federal proceedings the plaintiff was attempting to recover insurance benefits from an insurance company which had been placed into "rehabilitation" by the state. The *Wolfson* insolvency

proceedings, therefore, provided a special procedure, parallel to the federal action, which would resolve the plaintiff's claim. *Wolfson*, 51 F.3d at 144-46. Additionally, while *Wolfson* involved an insured's attempt to collect insurance proceeds from an insolvent insurer's assets, Allied World is not an insured of GIC, the insolvent insurer.

As for the Galen Defendants' reliance on the McCarran-Ferguson Act, the Court finds that it is misplaced, as the matter before this Court involves a contract dispute; Allied World's Complaint does not impact the State's regulation of insurance, nor would resolution of the issues raised before this Court "invalidate, impair, or supersede" a State statute. Rather, the instant case is a contract action that happens to involve an insolvent insurance company – GIC. It does not raise issues of important State regulatory concern or interests to which the McCarran-Ferguson Act's reverse-preemption applies. *Midwest Employers*, 2007 WL 3352339, at *3-5. The ultimate issue in this case is a standard contract dispute. As such, it does not involve the State's regulation of insurance. Allowing this matter "to go forward will not impair the [State] insurance regulatory scheme." *Midwest Employers*, 2007 WL 3352339, at *3-5. The Court finds, therefore, the McCarran-Ferguson Act does not require abstention in this matter. *Midwest Employers,* 2007 WL 3352339, at *5-6 (the McCarran-Ferguson Act and the *Burford* Doctrine did not require abstention where the issue was whether insurance contracts issued to the defendant were subject to arbitration; abstention was not required because the plaintiff was not a creditor of the defendant insurance company and was not seeking to affect the distribution of the defendant insurance company's assets).

Additionally, the Court notes that the State Liquidation Order was issued after Allied World initiated this lawsuit. *Moses H. Cohen*, 460 U.S. at 15.

To the extent the Galen Defendants argue that the principles of full faith and credit and

comity require abstention, "[a] state court cannot [] enjoin federal court actions." *Murff v. Prof'l Med. Ins. Co.*, 97 F.3d 289, 290 n.2 (8th Cir. 1996), and Allied World has not filed suit in federal court to avoid participation in or to circumvent State liquidation proceedings involving GIC. *See Midwest Employers,* 2007 WL 3352339, at *7 (citing *Clark v. Fitzgibbons*, 105 F.3d 1049 (5th Cir. 1997); *Integrity Ins. Co. v. Martin*, 769 P.2d 69 (Nev. 1989)).

As for the first prong of the *Burford* Doctrine, that abstention is appropriate when there are "difficult questions of state law bearing on policy problems of substantial public import," this case does not involve a complex State administrative process; rather, it involves matters of contract interpretation. *Wolfson*, 51 F.3d at 144. As for the second prong of the *Burford* Doctrine, that abstention is appropriate when federal review would be "disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern," there is no indication that proceeding with the federal case will disrupt or interfere with the State liquidation proceedings. *Id.* To the extent the Galen Defendants suggest that the Policies at issue in this matter are assets of GIC's estate and that, therefore, proceeding with the federal case will interfere with the liquidation proceedings, Allied World cites authority holding that, while an insurance policy owned by a debtor in bankruptcy proceedings may be property of the debtor's estate, the proceeds of an insurance policy are not. *Matter of Edgeworth*, 993 F.2d 51, 55-56 (5th Cir. 1993).

After considering the relevant inquiries as enumerated by controlling federal precedent, including *Burford*, 319 U.S. 315, and *Colorado River*, 424 U.S. 800, and applying those inquiries to the facts of this matter, the Court finds that the Galen Defendants have failed to demonstrate that any one of the "extraordinary and narrow exception[s] to the duty of the District Court to adjudicate a controversy properly before it" applies. *Quackenbush v. Allstate Ins. Co.*, 517 U.S.

11

706, 728 (1996) (quoting *Colorado River*, 424 U.S. at 813). As such, the Court finds that the Galen Defendants' Motion to Stay should be denied.

## CONCLUSION

For the reasons set forth above, the Court finds that the Galen Defendants' Motion to Stay is without merit and that this matter should not be stayed.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Galen Insurance Company and Galen Insurance Management Company's Motion to Stay (ECF 18) is **DENIED**.

Dated this 16th Day of August 2017.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE